374

## CIRCUIT COURT OF BRUNSWICK COUNTY

Eddie Murray Gillikin

    v.

Department of Corrections,
Office of Health Services, et al.

January 30, 2009

Case No. CL08-140

BY JUDGE W. ALLAN SHARRETT

    This matter comes before the Court upon Plaintiff's Motion for Judgment, Defendants' Plea of the Statute of Limitations, Defendants' Demurrer, Defendant Department of Corrections' ("DOC") Plea of Sovereign Immunity, and Defendant Harris's Plea of Sovereign Immunity. This is a *pro se* civil action for money damages, specifically under the Virginia Tort Claims Act ("the VTCA"), Va. Code §§ 8.01-195.1 (2007) *et seq.*, filed by a prisoner incarcerated in a state correctional facility. Venue is therefore proper under Va. Code § 8.01-693 (2007). Having considered the record in its entirety and in accordance with its discretion under Va. Code § 8.01-695 (2007) of the Virginia Prisoner Litigation Reform Act, the Court sees no need to hold oral argument and herein rules upon the record before it. For the following reasons, the Court sustains Defendants' Plea of the Statute of Limitations and dismisses the case with prejudice.

### I. *Summary of Facts*

    On May 24, 2006, while Plaintiff was a prisoner housed at Brunswick Correctional Center ("BCC") in Brunswick County, Virginia, Plaintiff injured his left hand playing softball. Treatment relevant to this cause of action lasted

from May 24, 2006, through November 3, 2006. Plaintiff initially sought treatment with Defendant Alvin Harris, M.D., at BCC and subsequently with several doctors at the Medical College of Virginia ("MCV"). On May 26, 2006, Dr. Harris ordered that Plaintiff be taken to the emergency room at MCV. MCV physicians determined that he needed to be seen at the MCV Hand Clinic ("the Hand Clinic") within one week. On May 30, 2006, Dr. Harris asked his staff to make an appointment at the Hand Clinic. BCC requested an appointment by facsimile for May 31, 2006, but made no further attempt to schedule an appointment. On June 7, 2006, the Hand Clinic notified BCC that Plaintiff had an appointment that day. On June 12, 2006, BCC rescheduled the appointment of June 7, 2006, for June 14, 2006, which Plaintiff attended.

On August 2, 2006, after appointments at the Hand Clinic, Dr. Isaacs at MCV gave Plaintiff two treatment options: (1) arthrodesis, a procedure in which the finger is fused into a fixed position, or (2) arthroplasty, a knuckle replacement surgery. Plaintiff elected the latter. Dr. Isaacs informed Plaintiff that arthroplasty was a poor option for a prisoner because of the lack of physical therapy available; however, Plaintiff persisted. On September 20, 2006, an MCV physician again wrote that he would not perform the surgery until Plaintiff was out of prison because, in his experience, the DOC could not provide the post-operative physical therapy that the surgery required. On or about October 3, 2006, Dr. Harris discussed the possibility of physical therapy with Dr. Stephens at the DOC's Office of Health Services, who told Dr. Harris that DOC would provide physical therapy "to the limit of our ability." On or about October 18, 2006, Dr. Harris relayed this information to the doctors at MCV. On October 19, 2006, MCV called Dr. Harris to reiterate that the arthroplasty would not be done while Plaintiff was incarcerated. On November 3, 2006, Dr. Harris stated his ultimate conclusions on the case, writing, in relevant part: (1) that the decision to perform the arthroplasty rested solely with the treating surgeons at MCV; (2) that the MCV surgeon had great fear that the therapy needed after an arthroplasty is difficult to obtain while incarcerated, which could result in a poor outcome and stiff joint; (3) that he discussed the issue with Dr. Stephens, who stated that outpatient physical therapy would be provided by the DOC to the limit of its ability; and (4) that, at that time, the decision to perform surgery still rested with the MCV orthopedics staff that provides the surgery.

Plaintiff alleges that Defendants' actions constitute medical malpractice, malfeasance, misfeasance, nonfeasance, negligence, gross negligence, and intentional tort. Specifically, he claims that their failure to perform the arthroplasty and their delay in timely scheduling an appointment

at the Hand Clinic constitute a failure to provide adequate medical treatment in accordance with their statutory mandate under Va. Code § 53.1-32. He seeks injunction relief, specifically an order compelling Defendants to perform an arthroplasty, and compensatory damages for his pain and suffering in the amount of $100,000 from the Commonwealth of Virginia and $500,000 from Dr. Harris.

## II. *Discussion*

Defendants contend in their Plea of the Statute of Limitations that Plaintiff's claims are barred as untimely. Defendants argue that Plaintiff's case is barred by the two-year statute of limitations for personal injuries relating to medical malpractice. *See* Va. Code § 8.01-243(A) (2007 & Supp. 2008). However, as Plaintiff claims injury under the VTCA, the normal statute of limitations for medical malpractice is inapplicable. Plaintiff's pleadings state that he is proceeding under the VTCA. As such, Plaintiff is bound by the VTCA's procedural requirements, including, most significantly, its statute of limitations.

As an initial hurdle, Plaintiff, as an inmate in a state correctional facility, must "verif[y] under oath by affidavit, that he has exhausted his remedies under the adult institutional inmate grievance procedures promulgated by the [DOC]." Va. Code § 8.01-195.3(7) (2007). Plaintiff has satisfied this requirement through his affidavit dated April 14, 2008.

Next, Plaintiff must provide notice of his claim to either the Attorney General or the Director of the Division of Risk Management within one year after the cause of action accrued.

> A. Every claim cognizable against the Commonwealth . . . shall be forever barred unless the claimant . . . has filed a written statement of the nature of the claim, which includes the time and place at which the injury is alleged to have occurred and the agency or agencies alleged to be liable, within one year after such cause of action accrued. . . .
>
> B. If the claim is against the Commonwealth, the statement shall be filed with the Director of the Division of Risk Management or the Attorney General. . . .
>
> C. The notice is deemed filed when it is received in the office of the official to whom the notice is directed. . . .

Va. Code § 8.01-195.6 (2007).

Plaintiff's notice of his claim against the Commonwealth was timely provided. While not required by the statute, Plaintiff provided notice to both the Attorney General and the Division of Risk Management. Based on subsection (C), Plaintiff's notice was filed on April 30, 2007, with the Division of Risk Management, and on May 22, 2007, with the Office of the Attorney General. Assuming without deciding that the earliest date on which the cause of action possibly could have accrued is May 24, 2006 (the date of the injury), both notices were filed within one year of the cause of action's accrual, in compliance with § 8.01-195.6(A).

As a next step, the claimant must file a motion for judgment within eighteen months of the filing of the notice of the claim.

> An action may be commenced pursuant to § 8.01-195.4(i) upon denial of the claim by the Attorney General or the Director of the Division of Risk Management or . . . (ii) after the expiration of six months from the date of filing the notice of claim. . . . *All claims against the Commonwealth . . . under this article shall be forever barred unless such action is commenced within eighteen months of the filing of the notice of claim.*

Va. Code § 8.01-195.7 (2007) (emphasis added).

It is at this step that Plaintiff has failed to meet the requirements of the VTCA. Plaintiff filed notice of his claim on April 30, 2007, with the Division of Risk Management. Therefore, Plaintiff had to file his Motion for Judgment on or before October 30, 2008. Plaintiff did not file the instant Motion for Judgment until November 20, 2008. As a result, his Motion for Judgment as against the DOC is untimely.

Undoubtedly, Plaintiff will argue that his filing of notice with the Attorney General on May 22, 2007, gave him until November 22, 2008, to file his Motion for Judgment, and that, therefore, his Motion for Judgment is timely. However, notice to the Attorney General was not required under the VTCA. Section 8.01-195.6(B) only requires proper notice to either the Attorney General or the Director of the Division of Risk Management. Plaintiff's superfluous notice to the Attorney General on May 22, 2007, is mere surplusage, and cannot act to extend a time period which began running when Plaintiff chose to file his notice with the Division of Risk Management.

As against Dr. Harris, if he is cloaked with sovereign immunity, then the VTCA controls and the Motion for Judgment likewise is untimely. On the other hand, if Dr. Harris is not cloaked with sovereign immunity, then the

VTCA does not apply. In that instance, Plaintiff's claim is barred by § 8.01-243.2 if the action relates to the conditions of Plaintiff's confinement, or by § 8.01-243(A) if it does not. At this juncture, the Court need not decide whether Dr. Harris is entitled to sovereign immunity or whether the action relates to the conditions of Plaintiff's confinement, as the action as against Dr. Harris is barred by the statute of limitations under any of these possible scenarios.

## III. *Conclusion*

For the foregoing reasons, the Court sustains Defendants' Plea of the Statute of Limitations and dismisses the case with prejudice. Having disposed of the matter based on the Plea of the Statute of Limitations, the Court need not address Defendants' other motions. It is so ordered.